IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| THOMAS H. KEELING | * |
| | * |
| v. | * Civil No. JFM-00-133 |
| | * |
| KRONICK, MOSKOVITZ, TIEDEMANN | * |
| & GIRARD, ET AL. | * |

\*\*\*\*\*

OPINION

Thomas H. Keeling has brought this action against the law firm of Kronick, Moskovitz, Tiedemann & Girard and William A. Kershaw, a shareholder in the firm. He asserts seven claims: breach of contract, promissory estoppel, intentional interference with contractual relations, fraud, negligent misrepresentation, wrongful termination and breach of implied-in-fact contract, and wrongful termination in violation of public policy. All of the claims arise from, or are related to, Keeling's underlying assertion that he was not fairly compensated by Kronick, Moskovitz for originating and working on cases related to the Honda MDL proceedings. Keeling originally instituted this suit in the Superior Court of the State of California for Sacramento County. Defendants removed the action to this court under the All Writs Act, 28 U.S.C. §1651(a). The basis for the removal is that under the class action settlement agreement, approved by a court order entered on October 22, 1998, I retained jurisdiction over certain matters, including disputes concerning attorneys' fees.

Keeling has filed a motion to remand. The issues have been fully briefed, and an oral argument was held on May 5, 2000. Keeling's motion will be denied.

A.

Keeling first argues that this case involves an internal dispute between himself and his former firm over which this court does not have subject matter jurisdiction. If this case is viewed separate and apart from the Honda MDL litigation, Keeling's position is correct. There is no diversity of citizenship between Keeling and the defendants, and no federal question (at least in the conventional sense) is presented. In my judgment, however, the case cannot be viewed independently of the Honda MDL litigation from which it sprung. Keeling's claims are derived from the attorneys' fee award I made in the MDL proceedings, and under the court-approved settlement agreement entered into by the parties and their counsel, I retained continuing jurisdiction over all attorneys' fees disputes.[1] This court unquestionably had jurisdiction over the MDL litigation, and my jurisdiction here is ancillary to that jurisdiction.[2]

In using the adjective "ancillary," I recognize that the doctrine of ancillary jurisdiction has been rendered archaic in the context in which it was once ordinarily invoked. Prior to the enactment of 28 U.S.C. §1367, that doctrine, along with the doctrine of pendent jurisdiction, was applied in determining whether a federal court with subject matter jurisdiction over one claim had the power to entertain related state law claims. The case law that developed in the area was extremely technical, and it sometimes became confused because of the use (and occasional

---

[1] Although I do not find it dispositive, I note that Keeling entered his appearance in the MDL proceedings on behalf of the plaintiff class.

[2] Defendants seem to suggest that Fed. R. Civ. P. 23 independently confers federal jurisdiction over this controversy. If that is their contention, it is unavailing. The Federal Rules of Civil Procedure cannot create jurisdiction where none otherwise exists. See United States v. Sherwood, 312 U.S. 584, 589-90 (1941); Pineville Real Estate Operation Corp. v. Michael, 32 F.3d 88, 90 (4th Cir. 1994).

misuse) of the "ancillary" and "pendent" phraseology. In adopting §1367, Congress cut through the Gordian knot of procedural complexity and utilized a new term, "supplemental jurisdiction."

Section 1367 is the exclusive source of jurisdiction in the area in which it is intended to apply. However, there is no reason why the creation of supplemental jurisdiction in one arena robs the concept of ancillary jurisdiction of its validity in another. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 368 (1994), nicely defines the boundaries of the concept. There, the Supreme Court held that a district court does not have ancillary jurisdiction over a dispute arising from the nonperformance of an agreement settling an action that had been before it unless the settlement agreement contains a provision retaining the court's jurisdiction to enforce the terms of the agreement. In so holding, the Court found that exercise of ancillary jurisdiction over a mere breach of a settlement agreement would further neither of the purposes for which the Court had exercised ancillary jurisdiction in the past: "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, . . .; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." Id. at 379-80. Here, in contrast to Kokkonen, both of these purposes are served by the exercise of ancillary jurisdiction over Keeling's claims.

Zucker v. Occidental Petroleum Corp., 192 F.3d 1323, 1329 (9th Cir. 1999), is also instructive. There, the Ninth Circuit held that "no Article III case or controversy is needed with regard to attorneys' fees . . . [in a class action], because they are but an ancillary matter over which the district court retains equitable jurisdiction even when the underlying case is moot."[3]

---

[3]Taylor v. Kelsey, 666 F.2d 53 (4th Cir. 1981), relied upon by Keeling, is not on point. There, the Fourth Circuit held that the district court properly found it did not have ancillary

Id. Keeling contends, quite correctly, that Zucker arose in a factual context different from that involved in this case. What Keeling fails to appreciate is that the facts here more strongly call for the exercise of ancillary jurisdiction.

In Zucker, the court was considering the standing of an unnamed class member to object to an attorneys' fees award made by the district court after the settlement of a class action. The award was not made out of a common settlement fund (as is the case here) but was imposed as an independent liability upon the defendants in favor of class counsel. Ultimately the court determined that it did not have to decide the standing question because of the unique procedural posture in which the appeal was presented. The manner in which the court skirted this decision is of significance:

> In a class action, whether the attorneys' fees come from a common fund or are otherwise paid, the district court must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper. This duty of the court exists independently of any objection. Therefore it exists, a fortiori, regardless of whether an objector has a remediable economic stake in the court's decision. Because the district court had the authority and duty to pass upon the fairness of the attorneys' fees settlement independently of whether there was objection, we need not decide whether the objector had standing.

Id. at 1328-29. If, as the Ninth Circuit found, a district court has the "inherent authority" and an "independent duty" to make attorneys' fees determinations even where the fees are not being paid out of a settlement fund otherwise to be paid to the members of the plaintiff class, clearly such a duty and authority exist where a common settlement fund is involved.

---

jurisdiction over a fee dispute between two lawyers who had been involved in litigation before it. However, the case did not involve fees for class counsel that had been approved by the court.

4

I recognize that in the present case resolution of Keeling's claim will not affect the amount to be paid out of the settlement fund to members of the plaintiff class. I have already determined the fairness and reasonableness of the aggregate attorneys' fees to be paid to class counsel. However, one of the implicit considerations underlying a determination that a fee award is "fair and reasonable" is that the fees be paid to lawyers who have earned them. Thus, when a dispute among different lawyers on account of the class fees I awarded arises, I must have continuing jurisdiction to resolve the dispute in order to protect the continued integrity of my order approving fair and reasonable fees in the first instance. Moreover, just resolution of the issues raised by fee disputes requires both an intimate working knowledge of what occurred during the course of the MDL litigation and a uniform dispute resolution process. These are the very reasons the parties provided for continuing jurisdiction in the settlement agreement and the very reasons I retained such jurisdiction.

B.

Keeling next contends that his claims against Kronick, Moskovitz do not constitute an attorney's fee dispute within the meaning of the court-approved settlement agreement. He argues that he is not asserting a right to a portion of the fees themselves but only reasonable compensation from the firm measured by a percentage (15%) of the fees awarded to it. Under the facts as alleged by Keeling in his complaint, however, this is a distinction without a difference. His claim for compensation is derived from his allegations that he was the attorney who brought the Honda litigation to Kronick, Moskovitz and that he substantially contributed toward prosecuting the litigation thereafter. The case would be different if Keeling asserted that he had a partnership agreement with the firm pursuant to which he was entitled to a fixed

percentage of its profits. In that event, the source of the revenues leading to those profits would be immaterial. But that is not what Keeling claims. Rather, the Honda MDL proceedings provide the sole basis for the compensation he is seeking.[4]

A separate order denying Keeling's motion to remand is being entered herewith.

Date: May 11, 2000

J. Frederick Motz
United States District Judge

---

[4]It may be that ultimately I will decide that some of Keeling's claims are ones over which I should not exercise supplemental jurisdiction under 28 U.S.C. § 1367. At least on the present record, however, it appears that all of his claims have a close nexus to the MDL litigation. This includes his claim for wrongful termination for threatening to report ethical violations allegedly committed by Kershaw. Specifically, Keeling's charge that Kershaw was making "secret settlements" of individual class members' claims against Honda, despite the fact that he was serving as class counsel, must be analyzed in the context of the rulings I made in the MDL proceedings certifying a "liability only" class and providing a mechanism for proof of damages by individual dealers after liability issues had been resolved. Of course, I am not now deciding that Kershaw's actions were appropriate. That question remains to be briefed and argued. I am only pointing out that a claim appearing on its face to involve a substantial question of California public policy may, in truth, more particularly involve consideration of issues peculiar to the MDL proceedings.